UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**FRANKLIN D. AZAR & ASSOCIATES, P.C.,**

    **Plaintiff,**

v.                                                                                                   No. 17-CV-869-JAP/SCY

**KEVIN EGAN,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

On August 24, 2017, Plaintiff Franklin D. Azar & Associates (Plaintiff) filed suit against Defendant Kevin Egan (Defendant) for intentional interference with contract and prima facie tort.[1] Defendant filed a Motion for summary judgment, which is fully briefed.[2] Because Plaintiff has failed to refute Defendant's evidence negating an essential element of its claims, the Court will grant the Motion.

### I.    BACKGROUND

Plaintiff, a Colorado law firm, alleges that Defendant committed tortious interference and prima facie tort by inducing its client Veronica Loya (Ms. Loya) to terminate Plaintiff's representation of her interests and obtain new counsel. Compl. ¶¶ 1, 8, 12–13, 18–29. In December 2010, Ms. Loya retained Plaintiff to represent her and her family on a contingency fee basis in a personal injury case arising out of injuries suffered by Ms. Loya's husband, Fidencio

---

[1] *See* COMPLAINT AND JURY DEMAND OF FRANKLIN D. AZAR & ASSOCIATES, P.C. (Doc. No. 1).
[2] *See* KEVIN EGAN'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 27) (Motion); PLAINTIFF'S OPPOSED REQUEST PURSUANT TO FED.R.CIV.P. 56(D) TO HOLD DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN ABEYANCE PENDING DEPOSITION OF DEFENDANT KEVIN EGAN (Doc. No. 32) (Response); DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSED REQUEST PURSUANT TO FED.R.CIV.P. 56(D) TO HOLD DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN ABEYANCE PENDING DEPOSITION OF KEVIN EGAN (Doc. No. 37) (Reply).

Loya, in a workplace accident. Statement of Undisputed Material Facts (UMF) ¶¶ 1, 5–6. However, Ms. Loya became unhappy with the way Plaintiff had been representing her because she felt that it had "taken too long and nothing had been resolved." *Id.* ¶ 10. In May 2012, Ms. Loya began to feel "unsafe" after the primary attorney who had been working on her case left Plaintiff's employment, and she wanted to find new legal counsel. *Id.* ¶ 12. One of the attorneys handling Fidencio Loya's workers' compensation case gave Ms. Loya a recommendation for another attorney. *Id.* ¶ 15. Defendant also helped Ms. Loya find referrals for other attorneys. *Id.* ¶ 18.

Defendant has known Ms. Loya and her parents for approximately fifteen years. UMF ¶¶ 1–2. He employs Ms. Loya as a housekeeper, and he has employed her father to perform household tasks. *Id.* Defendant views himself as a friend and advisor to Ms. Loya and her family, and Ms. Loya also considers him to be a friend. *Id.* ¶¶ 3–4. Defendant testified that his goal in assisting Ms. Loya to find substitute counsel was to get her case in "good hands." *Id.* ¶ 19. He did not feel that he could "in good conscience recommend" that Ms. Loya "spend one more minute with anybody from [Plaintiff.]" *Id.* Defendant ultimately recommended two attorneys to Ms. Loya based on their experience in medical and personal injury cases and their trial experience. *Id.* ¶ 20. On June 22, 2012, Ms. Loya signed a contingency fee agreement with these two attorneys and terminated her attorney-client relationship with Plaintiff. *Id.* ¶¶ 21–22.

After Ms. Loya's substitute counsel successfully negotiated a settlement on her behalf, Plaintiff brought a fee allocation proceeding against them to recover the reasonable value of its services. *Id.* ¶ 23. Plaintiff also pursued tort claims against the substitute counsel in a separate suit, arguing that it was entitled to recover all of the fees that it would have been paid had it not been discharged. Resp. at 3. During discovery in these lawsuits, Plaintiff deposed Ms. Loya and

Defendant. *Id.* at 3–4. Plaintiff asserts that it needs to conduct another deposition of Defendant before it can properly respond to Defendant's Motion because at the time of the earlier depositions it was not contemplating any claims against Defendant and it had no reason to fully explore the reasons for Defendant's recommendation that Ms. Loya hire new counsel. Resp. at 4. However, one of the deposition transcripts reveals that Plaintiff has deposed Defendant multiple times, during the depositions Plaintiff inquired into Defendant's role in Ms. Loya's decision to terminate Plaintiff's representation, and Plaintiff had informed Defendant at the time of the depositions that it was considering suit against him. Reply Ex. C, Egan Depo. at 349:19–22, 350:5–15. Plaintiff settled both of its suits against Ms. Loya's replacement counsel, *see* Resp. at 3, but then brought this suit against Defendant in a third attempt to recover legal fees that it contends it should have received on Ms. Loya's case, *see* Compl. ¶¶ 21–22. Defendant has moved for summary judgment, asserting that Plaintiff's claims fail as a matter of law.

## II. DISCUSSION

The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because the parties are of diverse citizenship and the amount in controversy is over $75,000. Since the harm alleged occurred in New Mexico, the substantive law of New Mexico will apply. *See Horizon AG–Prods. v. Precision Sys. Eng'g, Inc.*, No. CIV 09-1109 JB/DJS, 2010 WL 4054131, *4–5 (D.N.M. Sept. 28, 2010).

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court "'view[s] all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party.'" *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015) (quoting *Croy v. Cobe Labs. Inc.*,

345 F.3d 1199, 1201 (10th Cir. 2003). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). When the moving party would not bear the burden of persuasion at trial, it may demonstrate that summary judgment is appropriate "either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec.*, Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

    A.    **Intentional Interference with Contract**

New Mexico law recognizes the tort of interference with contract, but it draws a distinction between interference with existing contracts and with prospective contracts. *Fikes v. Furst*, 2003-NMSC-033, ¶¶ 21–22, 134 N.M. 602, 81 P.3d 545. An at-will contract, such as an attorney-client retainer agreement, is considered the equivalent of a prospective contract. *See id.*; *Guest v. Allstate Ins. Co.*, 2010-NMSC-047, ¶ 46, 149 N.M. 74, 244 P.3d 342. The parties agree that the standard applicable to prospective contracts governs Plaintiff's claim. *See* Mot. at 9; Resp. at 13.

To prove a claim for tortious interference with an at-will contract, the plaintiff must demonstrate that (1) there was an actual prospective contract between the plaintiff and a third party; (2) the defendant interfered with that contract with an improper motive or through

4

improper means; and (3) but for the defendant's interference, the contract would not have been terminated. *See Horizon AG–Prods.*, No. CIV 09-1109 JB/DJS, 2010 WL 4054131 at *7. Plaintiff has not alleged that Defendant acted through any improper means. Under the improper motive theory, the plaintiff must also show that a desire to harm the plaintiff was the defendant's sole motive for the interference. *Id.*; *see also Fikes*, 2003-NMSC-033, ¶ 21.

Defendant first argues that Plaintiff is unable to prove an improper motive because it lacks evidence refuting Defendant's asserted motivation to help Ms. Loya out of friendship. Plaintiff insists that Defendant was motivated to induce Ms. Loya to terminate Plaintiff's representation of her interests only by his animosity towards Plaintiff due to Defendant's dislike of Plaintiff's advertisements. Defendant does not dispute his distaste for Plaintiff's advertising, but Plaintiff has presented no evidence that supports its theory that this dislike motivated Defendant to harm Plaintiff. More importantly, Plaintiff has not presented any evidence that refutes Defendant's evidence as to his motivations. Plaintiff argues that it needs further discovery to properly support its claims, but Plaintiff has already deposed Defendant three times, has inquired during the depositions about the issues in this case, and was considering filing suit against Defendant at the time the earlier depositions were taken. *See* Ex. C, Egan Depo. at 349:19–22, 350:5–15. Consequently, the Court finds that delaying resolution of Defendant's Motion to allow Plaintiff to depose Defendant a fourth time is not justified. Defendant has presented undisputed evidence of his lengthy relationship with Ms. Loya and her family, his concern that she receive good legal representation, his offers to assist her with legal fees or other costs, and his lack of any financial or personal benefit from Ms. Loya's decision to retain new counsel. Plaintiff has therefore failed to present any evidence creating a genuine issue of material fact as to whether Defendant's sole motivation was to harm Plaintiff.

Additionally, Defendant argues that Plaintiff cannot prove that Ms. Loya would not have terminated her agreement with Plaintiff without Defendant's involvement. The undisputed evidence demonstrates that Ms. Loya was unhappy with Plaintiff's legal representation and was seeking new counsel. In addition to asking Defendant for assistance, Ms. Loya also spoke with her husband's workers' compensation attorneys about referrals for substitute counsel. One of the new attorneys ultimately hired by Ms. Loya was first suggested by one of the workers' compensation attorneys. It was Ms. Loya who made the decision to terminate her representation by Plaintiff in favor of the substitute counsel. Plaintiff has failed to present evidence creating a genuine issue of material fact as to whether Defendant's actions were the but-for cause of Ms. Loya's decision to terminate her agreement with Plaintiff. Consequently, the Court will grant summary judgment in favor of Defendant on Plaintiff's claim of intentional interference with contract.

**B.      Prima Facie Tort**

The essential elements of prima facie tort in New Mexico are (1) the commission of an intentional, lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff resulting from the intentional act; and (4) the absence of justification or insufficient justification for the defendant's actions. *Simon v. Taylor*, 252 F.Supp.3d 1196, 1232 (D.N.M. 2017) (citing *Lexington Ins. Co. v. Rummel*, 1997-NMSC-043, ¶ 10, 123 N.M. 774, 945 P.2d 992, 995; U.J.I. 13–1631, N.M. Rules Ann.). However, prima facie tort is a limited cause of action that is "not intended to provide a remedy for every intentionally caused harm." *Id.* "[P]rima facie tort should not be used to evade stringent requirements of other established doctrines of law." *Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 63, 109 N.M. 386, 785 P.2d 726.

Defendant argues that Plaintiff lacks evidence that Defendant intended to injure Plaintiff or that Defendant's actions were unjustified, since he was motivated by his desire to help Ms. Loya. As discussed above, Plaintiff maintains that Defendant intended to harm Plaintiff because he disliked Plaintiff's advertisement, but Plaintiff has not presented any actual evidence that Defendant intended to harm Plaintiff, or even evidence that calls into question Defendant's asserted incentives. Defendant has offered well-supported reasons for his actions that provide ample justification for his advice to Ms. Loya. Plaintiff does not dispute the long-standing relationship between Defendant and the Loyas, Defendant's feeling that Plaintiff was communicating poorly with Ms. Loya, or Ms. Loya's statement that she was unhappy with Plaintiff's representation and needed another lawyer. Defendant's admitted distaste for Plaintiff's advertising is not, standing alone, sufficient evidence to create a genuine issue of material fact as to Defendant's intent to harm Plaintiff.

Defendant also argues that, as with its failure to prove causation on its intentional interference claim, Plaintiff cannot prove that any injury it may have suffered was the result of Defendant's actions for the purposes of prima facie tort. It is undisputed that Ms. Loya sought advice from her husband's workers' compensation attorneys regarding attorney referrals as well as from Defendant, and that it was Ms. Loya's decision to hire substitute counsel. The Court agrees with Defendant that Plaintiff has presented no evidence creating a genuine issue as to whether Ms. Loya's decision was the result of Defendant's advice.

Further, Plaintiff's prima facie tort claim is based on the same allegedly wrongful actions that formed the basis for Plaintiff's claim of tortious interference. Plaintiff has failed to refute Defendant's evidence negating an essential element of its interference claim, and it may not evade that requirement by relabeling its cause of action as prima facie tort. *See Bogle v. Summit*

*Investment Co., LLC*, 2005-NMCA-024, ¶ 24, 137 N.M. 80, 107 P.3d 520 ("Prima facie tort has no application" where a plaintiff had an existing cause of action for intentional interference with contract, even though it was unable to establish the claim).

Finally, New Mexico courts do not allow attorneys to recover fees for work that they did not perform.

> The nature of the attorney-client relationship demands that the client retain the power to discharge the attorney at any time. As a corollary, we agree with the corresponding rule that an attorney's damages must be limited to quantum meruit for services actually rendered, not damages for services anticipated but never provided.

*Guest*, 2010-NMSC-047, ¶ 55. Although *Guest* involved the attempted recovery of unearned fees from a former client, this case against Defendant involves the same public policy concerns because the damages Plaintiff seeks to recover from Defendant are the losses it maintains that it suffered due to Ms. Loya's decision to terminate its representation of her interests—in other words, the unearned fees that Plaintiff anticipated it would receive for its services. To allow Plaintiff's prima facie tort claim to move forward "would set a dangerous precedent, potentially conditioning or encumbering a client's absolute right to discharge an attorney." *Id.* The Court agrees with the New Mexico Supreme Court that "such a result could tarnish the legal profession." *Id.* Consequently, the Court will grant summary judgment in Defendant's favor on Plaintiff's prima facie tort claim.

IT IS THEREFORE ORDERED that Defendant KEVIN EGAN'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 27) is GRANTED. The COMPLAINT AND JURY DEMAND OF FRANKLIN D. AZAR & ASSOCIATES, P.C. (Doc. No. 1) will be dismissed with prejudice by separate order.

_____
SENIOR UNITED STATES DISTRICT JUDGE